# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, <br><br> Plaintiff/Counterclaim Defendant <br><br> vs. <br><br> DANIEL K. KAMAKAU; JOHN DOES 1-50; JANE DOES 1-50; DOE PARTNERSHIPS 1-50; DOE CORPORATIONS 1-50; AND DOE GOVERNMENTAL UNITS 1-50, <br><br> Defendant, Counterclaim Plaintiff. <br>_____<br><br> DANIEL K. KAMAKAU, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE BANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BAC HOME LOANS SERVICING, LP; BANK OF AMERICA, N.A.; AND DOES 1-50, <br><br> Third-Party Defendants. <br>_____ | CIVIL NO. 11-00475 JMS/BMK <br><br> ORDER (1) GRANTING PLAINTIFF FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION TO DISMISS DEFENDANT DANIEL K. KAMAKAU'S AMENDED COUNTERCLAIMS, DOC. NO. 12; AND (2) GRANTING THIRD-PARTY DEFENDANTS COUNTRYWIDE HOME LOANS, INC., BANK OF AMERICA, N.A. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT OF DANIEL KAMAKAU, DOC. NO. 21 |

# ORDER (1) GRANTING PLAINTIFF FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION TO DISMISS DEFENDANT DANIEL K. KAMAKAU'S AMENDED COUNTERCLAIMS, DOC. NO. 12; AND (2) GRANTING THIRD-PARTY DEFENDANTS COUNTRYWIDE HOME LOANS, INC., BANK OF AMERICA, N.A. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT OF DANIEL KAMAKAU, DOC. NO. 21

## I. INTRODUCTION

On August 2, 2011, Plaintiff Federal National Mortgage Association ("FNMA") filed a Complaint in this court against Defendant Daniel Kamakau ("Kamakau"), asserting claims for declaratory judgment and ejectment based on Kamakau's failure to vacate real property located at 74-5113 Palihiolo Place, Kailua-Kona, Hawaii 96740 (the "subject property") after Kamakau defaulted on his mortgage loan and FNMA was the successful bidder at the subsequent mortgage foreclosure auction.  In response, Kamakau asserted Amended Counterclaims against FNMA and brought a Third-Party Complaint against Mortgage Electronic Registration Systems, Inc. ("MERS"), BAC Home Loans Servicing, LP ("BAC"), Bank of America, N.A. ("BANA"), and Countrywide Home Loans, Inc. and Countrywide Bank, N.A. ("Countrywide") (collectively "Third-Party Defendants").  Kamakau asserts the same claims against FNMA and Third-Party Defendants including claims titled (1) breach of contract; (2) RESPA, TILA, FDCPA Violations; (3) Quiet Title; and (4) Punitive Damages.

Currently before the court is FNMA's and Third-Party Defendants' (collectively, "Movants") Motions to Dismiss Kamakau's Amended Counterclaims and Third-Party Complaint, respectively, in which they argue that Kamakau has failed to state a claim upon which relief can be granted. Based on the following, the court agrees and GRANTS the Motions to Dismiss.

## II. <u>BACKGROUND</u>

### A. Factual Background

The same basic allegations are found in Kamakau's Amended Counterclaims and Third-Party Complaint as follows:

On December 8, 2006, Kamakau and his wife executed a note for $330,000 in favor of Countrywide Home Loans, Inc., which was secured by a mortgage on the subject property. *See, e.g.*, Doc. No. 7, Am. Counterclaims ¶ 6.[1] On February 7, 2007, Kamakau and his wife entered into a second mortgage loan secured by the subject property for $50,000 with Countrywide National Bank, N.A. *Id.* ¶ 7. Both mortgages assert that MERS "is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." Doc. No. 7-1, Am. Counterclaims Ex. A.

According to Kamakau, no transfers of the mortgage loans to any

---

[1] For ease of reference, the court cites solely to Kamakau's Amended Counterclaims.

third parties were recorded in the State of Hawaii Bureau of Conveyances. Doc. No. 7, Am. Counterclaims ¶ 8. Kamakau further asserts that he made "multiple requests under Hawaii Revised Statutes § 490," the Real Estate Procedures Act ("RESPA") 12 U.S.C. § 2605 et seq., and the Truth in Lending Act ("TILA") 15 U.S.C. § 1601, yet the subject property was "allegedly and illegally sold to BAC, claiming to be the highest bidder at a non-judicial foreclosure sale on March 10, 2010." *Id.* ¶ 9.

FNMA later brought an ejectment action in the Third Circuit Court of the State of Hawaii, which granted Kamakau's Motion to Dismiss on January 14, 2011. *Id.* ¶¶ 10-11.

## B.    Procedural Background

On August 2, 2011, FNMA filed its Complaint in this court against Kamakau, asserting claims for declaratory judgment and ejectment based on Kamakau's failure to vacate the subject property. As alleged in the Complaint, Kamakau defaulted on his $330,000 loan with Countrywide Home Loans, Inc., and FNMA was the highest bidder at a non-judicial foreclosure auction of the subject property.[2] In response, Kamakau filed an Answer, Counterclaims against FNMA,

---

[2] FNMA attached to its Complaint the Mortgagee's Affidavit of Foreclosure Under Power of Sale, and the Quitclaim Deed transferring title of the subject property. *See* Doc. Nos. 1-1, 1-2, Compl. Exs. 1-2. The Affidavit of Foreclosure Under Power of Sale indicates that BAC

(continued...)

and Third-Party Claims against Third-Party Defendants.  Kamakau's First

Amended Counterclaims and Third-Party Complaint assert claims against Movants

titled (1) breach of contract; (2) RESPA, TILA, FDCPA Violations; (3) Quiet

Title; and (4) Punitive Damages.

FNMA filed its Motion to Dismiss on October 4, 2011, and Kamakau

filed his Opposition on October 26, 2011.  Third-Party Defendants filed their

Motion to Dismiss on October 27, 2011, and Kamakau filed his Opposition on

December 13, 2011.  Replies were filed on December 20, 2011.  A hearing was

held on February 6, 2012.

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

*Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This

---

[2](...continued)
carried out the foreclosure auction and declared the subject property sold to BAC.  Doc. No. 1-1,
Compl. Ex. 1.  The Quitclaim Deed asserts, however, that FNMA was the purchaser.  Doc. No.
1-2, Compl. Ex. 2.

tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 129 S. Ct. at 1950.

///

///

# IV.  DISCUSSION

Although Kamakau brings Counterclaims against FNMA and a Third-Party Complaint against Third-Party Defendants, the claims in the pleadings mirror each other and the court addresses them together.  The court addresses Movants' arguments in turn.

## A.     Failure to Plead Facts as to Each Party

As an initial matter, Movants argue that Kamakau's claims should be dismissed because it is unclear exactly what Kamakau is asserting against each particular party.  Doc. No. 12-1, FNMA Mot. at 3-4; Doc. No. 21, Third-Party Defs.' Mot. at 5.  The court agrees -- none of the individual counts in either the Amended Counterclaims or the Third-Party Complaint makes any particular allegations as to any specific party, and the general allegations for the most part lump all the parties together.  Such conclusory pleading fails to state a claim that is plausible on its face as to FNMA and/or Third-Party Defendants.  Accordingly, the court finds that as a general matter, the Amended Counterclaims and the Third-Party Complaint fail to state a claim as to any party.

## B.     Breach of Contract (Count I)

Both the Amended Counterclaims and the Third-Party Complaint assert that Kamakau "entered into a promissory note and mortgage security with

third parties with the understanding that the parties would follow required responsibilities in proper recordation, assignment, and/or transfer of rights according to the laws of the State of Hawaii." *See* Doc. No. 7, Am. Counterclaims ¶ 14; Third-Party Compl. ¶ 19. Kamakau further asserts that FNMA and Third-Party Defendants:

> failed to perform according to the contract, failed to perform according to the customary and standard requirements of lenders in proper identification of interests in real property, and caused a broken chain of title to the Property of [Kamakau], slander of title, and improper recordation of ownership of secured interests in the property from the time of initiation and execution of the contract. . . .

*See* Doc. No. 7, Am. Counterclaims ¶ 15; Third-Party Compl. ¶ 20. Finally, Kamakau asserts that Third-Party Defendants securitized the mortgage loan "with no regard to implied terms and standards required of lenders of real property rights . . . ." *See* Doc. No. 7, Am. Counterclaims ¶ 16; Third-Party Compl. ¶ 21.

These wholly conclusory allegations fail to state a claim upon which relief can be granted. To the extent Kamakau is asserting a claim for breach of contract (as the title of the claim suggests), Kamakau has failed to allege even the basic elements of a breach of contract claim, much less factual allegations to support this claim. *See Iqbal*, 129 S. Ct. at 1949 (stating that Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that

offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").  Kamakau fails to identify (1) the contract at issue; (2) the parties to the contract; (3) whether Kamakau performed under the contract; (4) the particular provision of the contract allegedly violated by the parties; (5) when and how the parties allegedly breached the contract; or (6) how Kamakau was injured. *See Velez v. The Bank of N.Y. Mellon*, 2011 WL 572523, at *3 (D. Haw. Feb. 15, 2011) (explaining elements of breach of contract claim); *Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996)  ("In breach of contract actions, [ ] the complaint must, at minimum, cite the contractual provision allegedly violated.  Generalized allegations of a contractual breach are not sufficient.").  Indeed, the Kamakau's allegations are so wholly deficient the court cannot discern what each party did and how such actions form the basis of a breach of contract claim.

To the extent that Kamakau is attempting to assert some sort of slander of title claim on the basis that the transfers of the note and mortgage somehow injured Kamakau's interest in the subject property, such claim appears to be based on an assertion that any assignments of the note and/or mortgage are invalid.  But as explained in *Velasco v. Sec. Nat'l Mortg. Co.*, --- F. Supp. 2d ----, 2011 WL 4899935, at *4 (D. Haw. Oct. 14, 2011), a borrower cannot challenge an

assignment that he was not a party to:

> In Hawaii, "[g]enerally 'third parties do not have enforceable contract rights. The exception to the general rule involves intended third party beneficiaries.'" *Ass'n of Apartment Owners of Newton Meadows v. Venture 15, Inc.*, 115 Haw. 232, 167 P.3d 225, 262 (2007) (citing *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Haw. 300, 944 P.2d 97, 106 (Haw. App. 1997)). "A third party beneficiary is one for whose benefit a promise is made in contract but who is not a party to the contract." *Id.* (internal citations and quotations omitted). Absent an enforceable contract right, a party lacks standing to challenge the validity of the contract.

(some citations omitted). *Velasco* reasoned that because the borrowers were not parties to the assignments of the note and/or mortgage and could not prove that they were intended beneficiaries of the assignment, they could not dispute the validity of the assignments. *Id.* (dismissing borrower's claim titled "slander of title").

Applying this reasoning here, which the court finds persuasive, Kamakau was not a party to any assignments of the note and/or mortgage; nor was he the intended beneficiary. Rather, Kamakau was a stranger to any assignments and therefore "may not dispute the validity of the assignment." *Id.* (citing *Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, LLC*, 717 F.

Supp. 2d 724, 737 (E.D. Mich. 2010)).[3]  Such facts are fatal to any slander of title

claim.

Finally, to the extent that Kamakau is attempting to assert a claim

based upon the securitization of the mortgage loan, this court has addressed similar

claims in other cases, *see, e.g.*, *Long v. Deutsche Bank Nat'l Trust Co.*, 2011 WL

2650219, at *9 (D. Haw. July 5, 2011); *Velez v. Bank of N.Y. Mellon*, 2011 WL

572523, at *3 (D. Haw. Feb. 15, 2011), and has explained that there appears to be

no statutory or common law basis for such claims.  Indeed, numerous courts in this

Circuit have rejected that securitization of a mortgage loan provides the mortgagor

a cause of action.  *See, e.g.*, *Unlu v. Wells Fargo Bank NA*, 2011 WL 6141036, at

*8 (N.D. Cal. Dec. 9, 2011) ("To the extent that Plaintiffs' proposed amended

complaint would rely on claims regarding the securitization of the loan, via

REMIC, into a mortgage-backed security, there is no merit to the contention that

securitization renders the lender's loan in the property invalid." (quotations

omitted)); *Coleman v. Am. Home Mortg. Servicing, Inc.*, 2011 WL 6131309, at *4

(D. Nev. Dec. 8, 2011) ("[T]o the extent Plaintiff's allegations are construed to

---

[3]  And in any event, Kamakau did not assert facts establishing the elements of a slander of title claim.  "To establish slander of title at common law, a plaintiff must show falsity, malice, and special damages, *i.e.*, that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages."  *Velasco v. Sec. Nat'l Mortg. Co.*, --- F. Supp. 2d ----, 2011 WL 4899935, at *5 (D. Haw. Oct. 14, 2011) (quotations and citations omitted).

state claims regarding improper securitization of a mortgage, these also fail.");

*Henkels v. J.P. Morgan Chase*, 2011 WL 2357874, at *7 (D. Ariz. June 14, 2011)

(denying the plaintiff's claim for unauthorized securitization of his loan because he

"cited no authority for the assertion that securitization has had any impact on [his]

obligations under the loan, and district courts in Arizona have rejected similar

arguments"); *Johnson v. Homecomings Fin.*, 2011 WL 4373975, at *7 (S.D. Cal.

Sept. 20, 2011) (refusing to recognize the "discredited theory" that a deed of trust

"'split' from the note through securitization, render[s] the note unenforceable").

    In opposition, Kamakau does not specifically address any of his

claims and instead makes generalized (and at times nonsensical) arguments that

FNMA cannot foreclose without establishing a chain of title and/or establishing its

interest in the subject property, and that Movants caused various title defects due to

unrecorded transfers and securitization of the mortgage loan.[4] Putting aside that

these arguments are unsupported by law,[5] such arguments are irrelevant to whether

---

[4] Kamakau goes so far as to argue that FNMA is not the real party in interest and has no standing to bring this action. Such argument has no bearing on whether Kamakau has stated a claim upon which relief can be granted.

[5] Even if Kamakau had made such assertions in his Amended Counterclaims and/or Third-Party Complaint, courts have soundly rejected borrowers' claims based on a lender's non-possession of and/or failure to produce the original Note and Mortgage. *See Krakauer v. IndyMac Mort. Servs.*, 2010 WL 5174380, at *9 (D. Haw. Dec. 14, 2010) (citing *Angel v. BAC Home Loan Servicing, LP*, 2010 WL 4386775, at *9-10 (D. Haw. Oct. 26, 2010) ("[T]his Court and other district courts have rejected "show me the note" arguments like Plaintiffs'."); *Brenner*
(continued...)

Kamakau has stated any claims against Movants. The court therefore GRANTS

Movants' Motions to Dismiss Count I of the Amended Counterclaims and Third-

Party Complaint.

## C.     RESPA, TILA, FDCPA Violations (Count II)

Count II of the Amended Counterclaims and Third-Party Complaint

asserts:

> Third party Defendants have violated provisions of
> REAL ESTATE SETTLEMENT PROCEDURES ACT
> ("RESPA") (12 U.S.C. § 2605); TRUTH IN LENDING
> ACT (TILA) (15 U.S.C. § 1601) and FAIR DEBT
> COLLECTION PRACTICES ACT (FDCPA) 15 U.S.C.
> § 1692(g) by lack of responsiveness to
> Counterclaimant[']s correspondence and requests for
> responses to his Qualified Written Request for
> information regarding his loan (RESPA), for failure to
> provide proper response to his request for rescission
> (TILA), and certified copies of the promissory notes and
> allonges and assignments as well as mortgage documents
> to validate the debt with alleged subsequent assignees or

---

[5](...continued)
*v. Indymac Bank, F.S.B.*,  2010 WL 4666043, at *7 (D. Haw. Nov. 9, 2010) (explaining that
"[n]o law requires a lender to show a borrower an 'original' mortgage" prior to initiating
foreclosure); *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1181 (D.
Ariz. 2009) (discussing why courts routinely reject "show me the note" arguments to avoid
foreclosure)). Further, "any argument that MERS lacked the authority to assign its right to
foreclose and sell the property based on its status as 'nominee' cannot stand in light of
[*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011).]" *Velasco*, 2011
WL 4899935, at *11. Specifically, *Cervantes* held that claims attacking the MERS recording
system as fraudulent fail given that mortgages generally disclose that MERS's role as acting
"solely as a nominee for Lender and Lender's successors and assigns," and that MERS has the
right to foreclose and sell the property. *Id.* at 1042. Kamakau must consider these authorities in
determining whether she can amend her claims.

transferees that were not contracted with nor properly
identified in the State of Hawaii public records of the
Bureau of Conveyances as required by law.

*See* Doc. No. 7, Am. Counterclaims ¶ 19; Doc. No. 9 Third-Party Compl. ¶ 24.

As an initial matter, this claim does not even appear to state a claim
against FNMA, who is not a "Third Party Defendant." On this basis alone, this
claim fails as against FNMA. This claim also fails to state a claim for violation of
RESPA, TILA, or the FDCPA for the following reasons.

### 1. *RESPA*

Kamakau's conclusory allegation that Third-Party Defendants
violated RESPA is deficient for a number of reasons.

First, it appears that Kamakau is attempting to assert a claim for
violation of 12 U.S.C. § 2605(e) based on a Third-Party Defendant's failure to
respond to Kamakau's Qualified Written Request ("QWR"). RESPA provides that
"[i]f any servicer of a federally related mortgage loan receives a [QWR] from the
borrower (or an agent of the borrower) for information relating to the servicing of
such loan, the servicer shall provide a written response acknowledging receipt of
the correspondence within 20 days[.]"[6] 12 U.S.C. § 2605(e)(1)(A). "Servicing" is

---

[6] A QWR is defined as:

a written correspondence, other than notice on a payment coupon

(continued...)

defined as:

> receiving any scheduled periodic payments from a
> borrower pursuant to the terms of any loan, including
> amounts for escrow accounts described in section 2609
> of this title, and making the payments of principal and
> interest and such other payments with respect to the
> amounts received from the borrower as may be required
> pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). After receiving the QWR, within sixty days, the loan

servicer must either correct the borrower's account or, after conducting an

investigation, provide the borrower with a written explanation of: (1) why the

servicer believes the account is correct; or (2) why the requested information is

unavailable. *See* 12 U.S.C. § 2605(e)(2).

Kamakau asserts in only the most vague terms that there was a lack of

responsiveness to his QWR, and this allegation is insufficient to establish that

Kamakau made an actual QWR -- Kamakau fails to allege sufficient facts to

establish that his communication(s) to any of parties (whenever and however they

occurred) were (1) directed to a loan servicer, (2) concerned servicing of his loan

---

[6](...continued)
> or other payment medium supplied by the servicer, that:
> (i) includes, or otherwise enables the servicer to identify, the name
> and account of the borrower; and (ii) includes a statement of the
> reasons for the belief of the borrower, to the extent applicable, that
> the account is in error or provides sufficient detail to the servicer
> regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

as defined by RESPA, and (3) triggered the duty to respond. This claim fails to state a cognizable RESPA claim. *See Rey v. Countrywide Home Loans, Inc*., 2012 WL 253137, at *6 (D. Haw. Jan. 26, 2012) (citing *Lettenmaier v. Fed. Home Loan Mortg. Corp*., 2011 WL 3476648, at *12 (D. Or. Aug. 8, 2011) (dismissing RESPA claim where "plaintiffs fail to attach a copy of their correspondence to the Complaint or to allege facts showing that the communication concerned servicing of the loan as defined by the statute"); *Manzano v. Metlife Bank N.A.*, 2011 WL 2080249, at *7 (E.D. Cal. May 25, 2011) (Plaintiff "cannot simply allege in conclusory fashion that the written correspondence constituted QWRs."); *Aguilar v. Cabrillo Mortg*., 2010 WL 1909547, at *2-3 (S.D. Cal. May 11, 2010) ("Although Plaintiffs correctly argue that they have no affirmative duty to attach a copy of the letter to the SAC, they still must allege sufficient facts to demonstrate that the letter sent to [defendant] triggered the procedures set forth in 12 U.S.C. § 2605(e).").

Kamakau's RESPA claim also fails because he has not alleged any actual damages. Pursuant to 12 U.S.C. § 2605(f)(1), Kamakau has a burden to plead and demonstrate that he has suffered damages. Specifically, § 2605(f)(1) provides:

> Whoever fails to comply with any provision of this
> section shall be liable to the borrower for each such

failure in the following amounts:
(1)  Individuals
       In the case of any action by an individual, an
amount equal to the sum of --
       (A) any actual damages to the borrower as a result
of the failure; and
       (B) any additional damages, as the court may
allow, in the case of a pattern or practice of
noncompliance with the requirements of this section, in
an amount not to exceed $1,000.

Because damages are a necessary element of a RESPA claim, failure to plead

damages is fatal to a RESPA claim.  *See, e.g.*, *Rey*, 2012 WL 253137, at *5 (citing

*Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, at *14 (E.D. Cal. Sept. 1,

2011) (dismissing claim where the plaintiff failed to "allege any pecuniary loss

from defendant's alleged failure to respond to the QWR"); *Soriano v. Countrywide

Home Loans, Inc.*, 2011 WL 1362077, at *6 (N.D. Cal. Apr. 11, 2011) (reasoning

that "even if a RESPA violation exists, Plaintiff must show that the losses alleged

are causally related to the RESPA violation itself to state a valid claim under

RESPA"); *Shepherd v. Am. Home Mortg. Servs.*, 2009 WL 4505925, at *3 (E.D.

Cal. Nov. 20, 2009) ("[A]lleging a breach of RESPA duties alone does not state a

claim under RESPA. Plaintiff must, at a minimum, also allege that the breach

resulted in actual damages." (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F.

Supp. 2d 374, 383 (D. N.J. 2006))).

       Kamakau alleges only that he "has been damaged to the maximum

amount allowed by these statutes," Doc. No. 7, Am. Counterclaims ¶ 20, yet fails to allege that he suffered any actual damages *as a result* of the alleged RESPA violations. *See Shepherd*, 2009 WL 4505925, at *3. Indeed, although the requirement that a borrower plead damages is interpreted "liberally," *id.*, "the [borrower] must at least allege what or how the [borrower] suffered the pecuniary loss." *Ash v. OneWest Bank, FSB*, 2010 WL 375744, at *6 (E.D. Cal. Jan. 26, 2010).

In sum, Kamakau has failed to allege a valid RESPA claim against any party.

### 2. TILA

The only allegation supporting Kamakau's TILA claim is that Third-Party Defendants failed "to provide proper response to his request for rescission." *See* Doc. No. 7, Am. Counterclaims ¶ 19; Doc. No. 9, Third-Party Compl. ¶ 24.

This allegation, like all the allegations in Kamakau's pleadings, is so vague that it fails to state a plausible claim for relief -- Kamakau fails to explain when he requested rescission of the mortgage loan, which mortgage loan he requested rescission of, or even the basis of his rescission request. Without these basic facts, the court cannot discern the basis of this claim.

Moreover, to the extent Kamakau is attempting to assert a claim for

TILA rescission, such claim fails as a matter of law -- "TILA rescission is not possible once the subject property is sold." *Abubo v. Bank of N.Y. Mellon*, 2011 WL 6011787, at *11 (D. Haw. Nov. 30, 2011). Because there is no dispute that the subject property was sold at a non-judicial foreclosure sale, Kamakau cannot now bring a claim for TILA rescission.[7]

The court therefore GRANTS Movants' Motions as to Kamakau's claim for violation of TILA.

### 3.     FDCPA

As for Kamakau's FDCPA claim, the FDCPA prohibits various collection practices by "debt collectors" to, among other things, "eliminate abusive debt collection practices." *See* 15 U.S.C. § 1692(e) (describing the purpose of the FDCPA). The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who

---

[7] Even if the subject property had not been sold, a TILA claim for rescission would be barred by the three-year statute of limitations of 15 U.S.C. § 1635(f), which is an absolute bar of repose. *See Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986)).

To the extent Kamakau asserts a TILA damages claim based on a failure to honor a rescission request, such claim might also be time-barred depending on when the events occurred. Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Equitable tolling may nonetheless apply in certain circumstances where a borrower establishes that fraudulent concealment or equitable tolling applies. *King*, 784 F.2d at 915. In determining whether he can amend this claim, Kamakau must consider whether such claim is time-barred on its face.

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.  For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests[.]

15 U.S.C. § 1692a(6).  To be liable for a violation of the FDCPA, the defendant must, as a threshold requirement, be a "debt collector" within the meaning of the FDCPA.  *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).

Like Kamakau's other claims, the FDCPA claim is so vaguely asserted that the court cannot discern the basis of this claim.  To the extent this claim is based on the foreclosure of the subject property, "several courts have held that activities undertaken in connection with a nonjudicial foreclosure do not constitute debt collection under the FDCPA."  *Long v. Deutsche Bank Nat'l Tr. Co.*, 2011 WL 5079586, at *14 (D. Haw. Oct. 24, 2011) (citing *Gillespie v. Countrywide Bank FSB*, 2011 WL 3652603, at *2 (D. Nev. Aug. 19, 2011); *McFadden v. Deutsche Bank Nat'l Tr. Co.*, 2011 WL 3606797, at *10 (E.D. Cal. Aug. 16, 2011) (collecting cases)).

More problematic for this claim, however, is that Kamakau fails to allege sufficient facts from which the court can conclude that any of the Movants are "debt collectors." Indeed, original lenders, creditors, mortgage servicing companies, and mortgage brokers generally do not qualify as "debt collectors." *See, e.g.*, *Lyons v. Bank of Am., NA*, 2011 WL 3607608, at *12 (N.D. Cal. Aug. 15, 2011) ("The FDCPA applies to those who collect debts on behalf of another; it does not encompass creditors who are collecting their own past due accounts."); *Radford v. Wells Fargo Bank*, 2011 WL 1833020, at *15 (D. Haw. May 13, 2011) (collecting cases stating that original lenders and mortgage servicing companies are not "debt collectors"); *Sakugawa v. IndyMac Bank, F.S.B.*, 2010 WL 4909574, at *5 (D. Haw. Nov. 24, 2010) (dismissing FDCPA claim because the mortgage broker was not a "debt collector"). Thus, this claim fails as a matter of law against Movants.

The court GRANTS the Motions to Dismiss Kamakau's claim for violation of the FDCPA.

**D. Quiet Title (Count III)**

Kamakau asserts that he and his wife are "equitable owners of the Subject Property," and that Kamakau "seeks to quiet title against the claims of [Movants] and all persons . . . . claiming any legal or equitable right, title, estate,

lien, or interest in the [subject property] adverse to [Kamakau's] title" because they "have no right, title, estate, lien or interest in the Subject Property." Doc. No. 7, Am. Counterclaims ¶¶ 25-27; Doc. No. 9, Third-Party Compl. ¶¶ 31-33.

As this court has explained in numerous orders alleging similar claims, *see, e.g.*, *Teaupa v. U.S. Nat'l Bank N.A.*, 2011 WL 6749813, at *15 (D. Haw. Dec. 22, 2011); *Abubo*, 2011 WL 6011787, at *5; *Long*, 2011 WL 5079586, at *12, the court construes such claim as being brought under Hawaii Revised Statutes ("HRS") § 669-1(a) ("[Quiet title] [a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."). Kamakau, however, has not alleged sufficient facts regarding the interests of various parties to make out a cognizable claim for "quiet title." Kamakau has merely alleged elements of § 669-1, and thus the Count fails to state a claim. *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.).

Further, in order to assert a claim for "quiet title" against a mortgagee, a borrower must allege he has paid, or is able to tender, the amount of indebtedness. "A basic requirement of an action to quiet title is an allegation that

plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the deed of trust.'"  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)).  "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property."  *Id.* (citations omitted).  Applying this law here, Kamakau has not indicated that he has paid his outstanding loan balance, much less that he is able to do so.  In short, he fails to state a claim for quiet title.

The court therefore GRANTS the Motions to Dismiss as to Count III of the Amended Counterclaims and Third-Party Complaint.

## E.     Punitive Damages (Count IV)

Kamakau asserts that Movants "have acted wantonly or oppressively" such that "[p]unitive damages are necessary to punish [them] and deter them and others in the real estate lending and mortgage industries from committing similar wrongs and offenses in the future."  Doc. No. 7, Am. Counterclaims ¶¶ 29-30; Doc. No. 9, Third-Party Compl. ¶¶ 35-36.

Punitive damages is a part of the relief requested, and not an independent claim.  The court therefore GRANTS Movants' Motions to Dismiss Count IV of the Amended Counterclaims and Third-Party Complaint.  This

dismissal, however, does not bar Kamakau from seeking punitive damages as a form of relief.

## V.  <u>CONCLUSION</u>

Based on the above, the court (1) GRANTS FNMA's Motion to Dismiss Kamakau's Amended Counterclaims; and (2) GRANTS Countrywide's, BANA's, and MERS' Motion to Dismiss Kamakau's Third-Party Complaint.

If Kamakau so chooses, he may file Second Amended Counterclaims and/or an Amended Third-Party Complaint, consistent with this Order.  Kamakau is further notified that such amended pleadings will supersede the Counterclaims and Third-Party Complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the court will treat the Amended Counterclaims and Third-Party Complaint as nonexistent.  *Ferdik*, 963 F.2d at 1262.  Any cause of action that was raised in the Amended Counterclaims and Third-Party Complaint is waived if it is not raised in the Second Amended Counterclaims and/or an Amended Third-Party Complaint.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

If Kamakau chooses to file Second Amended Counterclaims or an Amended Third-Party Complaint, he must assert basic factual allegations in sufficient detail to state a "plausible" claim, and then clearly set forth separate

counts for each cause of action.  That is, such pleadings must:

(1)     state clearly how *each* of the Movants has injured Kamakau, or how the court can provide relief against each Movant.  In other words, Kamakau should explain, in clear and concise allegations, what each Movant did (or failed to do) and how those specific facts create a plausible claim for relief in reference to a specific statute or common-law cause of action;

(2)     set forth separate counts for each cause of action.  In other words, Kamakau should not lump multiple causes of action within a single count; and

(3)     state clearly the relief sought and how there is basis for a claim in federal court.  In other words, Kamakau must explain the basis of this court's jurisdiction.

Leave is not granted, however, for Kamakau to assert claims for TILA rescission (as opposed to TILA damages), FDCPA violations, securitization of the mortgage loan, or punitive damages (as a stand-alone claim as opposed to a request for relief).  Granting leave to amend such claims would be futile for the reasons described above.

The court recognizes that after the hearing on the Motions to Dismiss,

Kamakau's counsel filed a Motion to Withdraw as Counsel, which was granted on February 23, 2012. The court further understands that Kamakau intends to proceed in this action pro se. Accordingly, Kamakau must file his Second Amended Counterclaims and Amended Third-Party Complaint by March 27, 2012. If Kamakau fails to file his Second Amended Counterclaims and Amended Third-Party Complaint by March 27, 2012, this action will proceed as to FNMA's claims against Kamakau only.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 23, 2012.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Fed. Nat'l Mortg. Assoc. v. Kamakau*, Civ. No. 11-00475 JMS/BMK, Order (1) Granting Plaintiff Federal National Mortgage Association's Motion to Dismiss Defendant Daniel K. Kamakau's Amended Counterclaims, Doc. No. 12; and (2) Granting Third-Party Defendants Countrywide Home Loans, Inc., Bank of America, N.A. and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss the Third-Party Complaint of Daniel Kamakau, Doc. No. 21